UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**PHILLIP AARON UGALDE**,                                Civil Case No. 6:12-CV-00347-KI

     Plaintiff,                                OPINION AND ORDER

  v.

**RON CHASE, in his individual and
official capacity as Executive Director of
Sponsors Inc.; SPONSORS INC. of
Eugene, Oregon; LINDA HAMILTON, in
her individual and official capacity as
parole officer**,

     Defendants.


   Phillip Aaron Ugalde
   370 River Rd.
   Eugene, OR 97404

     Pro Se Plaintiff


Page 1 - OPINION AND ORDER

Sebastian Newton-Tapia
Lane County Counsel
125 East 8th Ave.
Eugene, OR 97401

     Attorney for Defendant Linda Hamilton

Scott Meyer
Patrick J. Kurkoski
Mitchell, Lang & Smith
2000 One Main Place
101 S.W. Main Street
Portland, OR 97204-3230

     Attorneys for Defendants Ron Chase and Sponsors, Inc.

KING, Judge:

Plaintiff Phillip Aaron Ugalde[1] brings this civil rights action pursuant to 42 U.S.C. § 1983 against his parole officer, Linda Hamilton, and his former employers and housing providers, Ron Chase and Sponsors, Inc. On May 29, 2012, I dismissed plaintiff's complaint, with leave to amend, for failure to state a claim. On September 5, 2012, I dismissed plaintiff's amended complaint in part. I ordered the case to proceed on a single due process claim based on the summary deprivation of plaintiff's alleged possessory interest in his transitional housing, as well as his pendent state law claims.

Pending before me are the following motions: Hamilton's Motion to Dismiss; Motion for Summary Judgment [36] and a Motion for Summary Judgment [25] filed by Chase and Sponsors. For the following reasons, I grant Hamilton's motion, and grant in part and deny in part Chase and Sponsors' motion.

---

[1]Ugalde was known by the surname Castellanos during the events alleged in his Amended Complaint.

Page 2 - OPINION AND ORDER

## FACTS

Ron Chase was the executive director of Sponsors during the events at issue in plaintiff's lawsuit. Sponsors provides transitional housing in Lane County to sex offenders released from prison. According to plaintiff, Sponsors also provides housing on a month-to-month contract to sex offenders who have made the transition from Sponsors' main facility, but who cannot find long term housing elsewhere.

Beginning in October 2007, plaintiff rented from Sponsors a private unit on the third floor. At that time, he was serving a term of post-prison supervision and Hamilton was his parole officer. Plaintiff originally paid $350 a month for a month-to-month tenancy.

On June 25, 2009, plaintiff was hired as a part-time resident manager of the housing unit. He moved from the third floor unit to a second floor manager's unit with two storage closets and a private bathroom. Pay records reflect Sponsors initially paid him $500 a month and deducted $200. Decl. of Glen Swires Ex. 1, at 1. Plaintiff alleges the $200 was for rent. Pay records reflect that at least as of January 2010, plaintiff received a salary of $500 a month and Sponsors deducted nothing. Plaintiff contends Sponsors hired him "with the expectation for Plaintiff to maintain fulltime [sic] residency on the property as he did as a tenant." Pl.'s Mem. 2.

The house is a drug and alcohol-free facility, and plaintiff's job was to monitor the residents for drug and alcohol use, refer them for urinalysis if he was suspicious, and evict residents for use of drugs or alcohol. He also collected monthly rent and provided receipts.

Sponsors' Personnel Policy, referred to by the parties as the employment handbook, states that employment is at will. In addition,

> Reporting to work under the influence of intoxicating liquor or illegal drugs is
> prohibited.  The use or possession by an employee on company premises,
> property, or during work time, of an intoxicating liquor, controlled or illegal
> substance, not medically authorized, or the sale of any such item, is also
> prohibited and will result in immediate disciplinary action, including termination.

Decl. of Paul Solomon Ex. 1, at 9.  Pursuant to the Policy, "[t]erminations will be in written form and will be issued by the Executive Director."  Id. at 10.  Plaintiff says he had no knowledge of the employee handbook.

On February 28, 2010, plaintiff went to see his parole officer, Hamilton, who asked him to submit to a urinalysis.  Plaintiff admitted to Hamilton that he had used drugs.  Hamilton called Chase who asked Hamilton to escort plaintiff to his room, obtain his room key, and wait for him to pack up his belongings.  Plaintiff alleges Hamilton told him that if he refused, she would arrest him.  At about 5 p.m., Hamilton told plaintiff it was time to leave and if plaintiff returned to Sponsors' property she would cite him for trespassing.

Plaintiff alleges he had lived at the residence for two years, had acquired a large amount of property, and felt he needed more time to pack.  Hamilton refused to give him more time and Chase did not answer his phone calls.  Afraid of being arrested, he left the following belongings: furniture, two studio refrigerators, two air conditioners, two televisions, a crock pot, laptop, coffee maker, family pictures, clothes, cutlery set, cookware, tools, portable air compressor, Honda 3500 power washer, lawn mower and other miscellaneous items.

According to Joseph Ches, plaintiff "occupied an 8' by 10' room in the basement" and did not have private storage.  Decl. of Joseph Ches ¶ 3.  Ches also testified, "Ugalde left no possessions behind when he vacated the premises on February 28, 2010."  Id. at ¶ 4.  Sponsors did not respond to plaintiff's declaration in which plaintiff stated he lived in the second floor

manager's unit with two storage closets.  I view the evidence in plaintiff's favor for purposes of this motion.

Plaintiff alleges Hamilton told him never to call or visit Sponsors lest he risk arrest. Plaintiff repeatedly asked Hamilton about his property and when he could retrieve it.  Plaintiff alleges Hamilton refused him the right to communicate with Sponsors.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.    Timeliness of Plaintiff's Response

I gave plaintiff more time to respond to the motion filed by Sponsors and Chase, directing him to file his materials by January 14, 2013.  ECF # 49.  He signed his response and declaration

Page 5 - OPINION AND ORDER

on January 14, 2013, but they were not filed with the Court until January 17, 2013.  In the

exercise of my discretion, I will allow the late filing this time.[2]

II.    Section 1983 Claim

Plaintiff alleges Hamilton and Chase, acting under color of state law, worked together to

deprive him of his residence.  I previously concluded plaintiff had adequately alleged a

procedural due process claim by contending he was summarily evicted, without notice or hearing,

from his residence.

Sponsors and Chase dispute plaintiff had a property right for purposes of a constitutional

claim.  "A threshold requirement to a substantive or procedural due process claim is the

plaintiff's showing of a liberty or property interest protected by the Constitution."

Wedges/Ledges of California, Inc. v. City of Phoenix, Arizona, 24 F.3d 56, 62 (9th Cir. 1994).

"A protected property interest is present where an individual has a reasonable expectation of

entitlement deriving from existing rules or understandings that stem from an independent source

such as state law."  Id. (internal quotation marks and citation omitted).

A.    Property Interest Under Statutory Law

Looking first to the Residential Landlord and Tenant Act ("RLTA") as one potential

source for any property right plaintiff may have held, Sponsors and Chase argue plaintiff was not

_____

[2]I note that courts have applied the "prisoner mailbox rule," which considers a document
"filed" on the date given to prison authorities to mail to the court, to a vast array of legal
documents, including civil rights complaints, habeas corpus petitions, Rule 50(b) motions,
inmate trust account statements, notices of appeal, and responses to summary judgment.  See
Sierra v. Ramirez, No. CV 07-75-CL, 2007 WL 4150965, at *2 (D. Or. Nov. 19, 2007); James v.
Madison St. Jail, 122 F.3d 27 (9th Cir. 1997); Caldwell v. Amend, 30 F.3d 1199 (9th Cir. 1994);
see also Bunch v. Riley, No. 06-5220, 2008 WL 4278174 (W.D. Ark. Sept. 18, 2008) (mailbox
rule applied to inmate's response to summary judgment).  At the time plaintiff submitted his
response, he was incarcerated at Shutter Creek Correctional Institution.

a "tenant" under the Act because the law excludes from its coverage occupancy conditioned upon

employment.  They argue they provided him a room as part of his at-will employment at the

transitional housing facility.  Thus, plaintiff had no property right in his employment, since he

was the at-will employee of a private entity, and he had no property right in his room under the

RLTA.  See Lawson v. Umatilla Cnty., 139 F.3d 690 (9th Cir. 1998) (no property right in at-will

employment under Oregon law).

Specifically, the RLTA excludes from its coverage:

> Occupancy by an employee of a landlord whose right to occupancy is conditional
> upon employment in and about the premises.

ORS 90.110(7).

I do note, however, that the exclusion language goes on to provide, "However, the

occupancy by an employee as described in this subsection may be terminated only pursuant to

ORS 91.120."  Id.  That section directs an employee

> may only be evicted pursuant to ORS 105.105 to 105.168 after at least 24
> hours' written notice of the termination of employment or a notice period set forth
> in a written employment contract, whichever is longer.  This section does not
> create the relationship of landlord and tenant between a landlord and such
> employee.

ORS 91.120.

Although it is tempting to view the provision requiring 24 hours' written notice as an

indication that state law recognizes a substantive property right, I agree with Chase and Sponsors

that a state law's procedural condition does not make plaintiff's occupancy a "property" right for

purposes of the Due Process Clause.  See Dorr v. Butte Cnty., 795 F.2d 875, 877-78 (9th Cir.

1986) (in the termination of a probationary employee, a "substantive right cannot exist by virtue

of a procedural right"); Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) ("The State may

choose to require procedures for reasons other than protection against deprivation of substantive

rights, of course, but in making that choice the State does not create an independent substantive

right."); Hayward v. Henderson, 623 F.2d 596, 597 (9th Cir. 1980) ("A guarantee of procedural

fairness does not establish a property interest.").  Accordingly, plaintiff had no property right by

virtue of the RLTA.

Nevertheless, as Judge Mosman recognized, an exemption from the RLTA is a "pyrrhic

victory" if plaintiff had a property interest from some other source, but state law fails to provide

him with the procedural protections required by the U.S. Constitution.  Picken v. Multnomah

Cnty., No. 3:11-cv-00024-MO, 2012 WL 1151037, at *5 (D. Or. Apr. 5, 2012).  Thus, I address

the other grounds on which plaintiff may have had a property interest in his occupancy.

      B.     Property Interest Created by Common Law or Contract

Sponsors and Chase do not address two other methods by which plaintiff may have

obtained a "property" interest in his occupancy at the transitional housing facility:  common law

and contract.

I see no basis to find a contract-created property interest.  See Trivoli v. Multnomah Cnty.

Rural Fire Protection Dist. No. 10, 74 Or. App. 550, 554, 703 P.2d 285 (1985).  There is no

evidence of a rental agreement or employment contract.  The Personnel Policy makes it clear that

plaintiff's employment was at will, and the policies specifically preclude construing them to give

plaintiff any right to continued employment.  The Personnel Policy does not address occupancy.

A bare requirement for written termination is insufficient to imbue his employment, or

occupancy related to his employment, with a substantive property right.  See Picken, No. 3:11-

cv-00024-MO, 2012 WL 1151037, at *4-5 (no written rule indicating entitled to continued occupancy or due process).

With respect to the common law, the general rule is that occupancy as part of compensation, and when necessary to the performance of services rendered, is more in the nature of master-servant rather than landlord-tenant. Lesser v. Great Lakes Casualty Co., 171 Or. 174, 185-85, 135 P.2d 810 (1943) (citing multiple cases therein); see also 52 C.J.S. Landlord & Tenant § 10 (2013) ("right of occupancy or possession of an employee under his or her contract of employment or service such as is necessary for, or incident to, the performance of the services to be rendered" is not a landlord-tenant relationship); Tatro v. Lehouiller, 147 Vt. 151, 513 A.2d 610 (1986) (factors include whether occupancy necessary to performance of work, payment of rent, occupancy extended beyond termination). Plaintiff himself asserts that Chase and Sponsors hired him with the expectation that he maintain full-time residency and he filled the position of resident manager. As a result, there is no material issue of fact that plaintiff's continued occupancy was tied to his employment, precluding the possibility of a landlord-tenant relationship under common law. As a result, plaintiff had no property right to his residence under the common law.[3]

C.    Qualified Immunity

Hamilton argues she must be dismissed pursuant to the doctrine of qualified immunity. The court applies a two-prong test to evaluate whether officers are entitled to qualified immunity.

---

[3]Plaintiff has not alleged a procedural due process violation with respect to the way in which defendants treated his belongings. In my initial opinion on plaintiff's Complaint, I commented that the arbitrary deprivation of property does not give rise to a procedural due process claim provided that there is an adequate state post-deprivation remedy.

The first question is whether the plaintiff has alleged facts showing the officer violated a constitutional right, and the second question is whether that right was clearly established at the time of the event.  Ashcroft v. al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2080 (2011).  "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Friedman v. Boucher, 580 F.3d 847, 858 (9th Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001)).  Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam).  If the officers' conduct falls in the "hazy border" between lawful and unlawful conduct, the officer is entitled to qualified immunity.  Id. at 201.

Hamilton contends plaintiff's occupancy did not come under the RLTA under a different provision than that relied on by Sponsors and Chase.  She contends plaintiff was living in a "residence in an institution, public or private," which is excluded from the RLTA and, therefore, plaintiff was "not entitled to the procedural due process rights provided in ORS Chapter 90." Hamilton's Mem. 5 (citing ORS 90.110(1)).  Furthermore, because application of ORS 90.110(1) was not "clearly established" to have violated the due process clause, on or before February 28, 2010, Hamilton is entitled to qualified immunity.

There are a couple of problems with Hamilton's argument.  First, neither Chase nor Sponsors sought application of the institutional residence exclusion from the RLTA; in fact, a full reading of the language makes me question whether it would apply to plaintiff as there is no evidence he was living at Sponsors "incidental to detention or the provision of medical, geriatric,

educational, counseling, religious or similar service[.]" ORS 90.110(1). Rather, as Chase and Sponsors argued, and I accepted, he lived at Sponsors as part of his employment. Furthermore, as I noted above, the fact that state law "does not provide [him] with any procedural protections for [a] property interest . . . would simply be a failure of state law to do what the United States Constitution commands." Picken, No. 3:11-cv-00024-MO, 2012 WL 1151037, at *5. As that case made clear, and as my analysis above indicates, the existence of a property right under common law or contract is fact-dependent.

Nevertheless, because I have concluded plaintiff had no property interest in the occupancy of his room at Sponsors–and therefore failed to allege a constitutional violation under the first prong of the qualified immunity analysis–I must dismiss plaintiff's due process claim against Hamilton.

II.    State Claims

A federal court may exercise jurisdiction over state law claims when the "federal claim is sufficiently substantial to confer federal jurisdiction, and there is a common nucleus of operative fact between the state and federal claims." Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995); see also 28 U.S.C. § 1367 (supplemental jurisdiction over related claims). The federal claim must be "'absolutely devoid of merit or obviously frivolous' to divest the court of pendent jurisdiction." Brady, 51 F.3d at 816. Even if the federal claim is dismissed, the court may exercise its discretion and retain jurisdiction over state law claims, after weighing considerations of economy, convenience, fairness, and comity. Id.

Plaintiff's procedural due process claim was not frivolous. In fact, in litigating the existence of any property right in his residence, Sponsors and Chase have conceded for purposes

Page 11 - OPINION AND ORDER

of their motion that they violated state law by failing to give plaintiff 24 hours' written notice of termination.  ORS 91.120.  The procedural failure at the very least gave the court pause.

After reviewing the necessary factors, I exercise my discretion to retain plaintiff's remaining claims in federal court.  Judicial economy makes it reasonable and proper to retain jurisdiction in this case and there are no novel issues to resolve under state law.  The operative facts of the dismissed federal claim and plaintiff's remaining claims are the same:  plaintiff alleges he was summarily evicted from his residence without the opportunity to retrieve all of his belongings and he suffered emotional distress as a result.  This court is fully competent to resolve the remaining claims.

A.    Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress ("IIED") contains the following elements:

> (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995).

Sponsors and Chase argue that their conduct was not outrageous as a matter of law.  They simply terminated an employee who admitted to using drugs and evicted him from drug and alcohol-free housing.

Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law, but it is a fact-specific analysis.  House v. Hicks, 218 Or. App. 348, 358, 179 P.3d 730 (2008).  Here, the relationship of employer-employee, or  landlord-

tenant for that matter, imposes a "greater obligation [on defendants] to refrain from subjecting

the victim to abuse, fright, or shock than would be true in arm's-length encounters among

strangers." Id. at 360 (citing cases). Additionally, "the illegality of conduct [failure to give the

requisite statutory notice of termination and eviction] is relevant to, but not determinative of,

whether the conduct is sufficiently outrageous to support an IIED claim." Id. at 359.

Nevertheless, other relevant factors are simply not present: there is no evidence

defendants acted "with an ulterior motive or to take advantage of an unusually vulnerable

individual," that defendants falsely accused plaintiff, or that they were violent, abusive or

intimidating. Id. at 360. In short, looking at all the factors, I find that since defendants had a

right to terminate plaintiff's employment at will, plaintiff admitted to using drugs, he was living

in drug and alcohol-free housing as a condition of his employment, and he was responsible for

attending to the sobriety of the residents at the transitional housing, defendants did not act

outside the bounds of socially tolerable conduct. This claim is dismissed.

    B.    Conversion

Under Oregon law, "[c]onversion is an intentional exercise of dominion or control over a

chattel which so seriously interferes with the right of another to control it that the actor may

justly be required to pay the other the full value of the chattel." In re Complaint as to the

Conduct of Martin, 328 Or. 177, 184, 970 P.2d 638 (1998).

Sponsors and Chase argue only that plaintiff's conversion claim is a "fabrication" and

that plaintiff failed to itemize his missing belongings.

Accepting plaintiff's facts as true, he lived in a second floor unit, not an 8' by 10' unit in

the basement, and he had to leave the following belongings behind: furniture, two studio

Page 13 - OPINION AND ORDER

refrigerators, two air conditioners, two televisions, a crock pot, laptop, coffee maker, family pictures, clothes, cutlery set, cookware, tools, portable air compressor, Honda 3500 power washer, lawn mower and other miscellaneous items.

As a result, plaintiff's conversion claim is not dismissed against Sponsors and Chase.

C.    <u>State Claims Alleged Against Hamilton</u>

Conversion is a tort claim, subject to the Oregon Tort Claims Act when asserted against "officers, employees, or agents of a public body acting within the scope of their employment or duties." ORS 30.265(1). Hamilton is an officer, employee or agent of Lane County. As a result, the Act requires that plaintiff have provided notice to the public body within 180 days of the alleged loss or injury. ORS 30.275. Even applying the 90 day tolling period, plaintiff would have had to notify Lane County of his intention to sue Hamilton by November 25, 2010. Plaintiff never sent a tort claims notice to Hamilton or to Lane County. Accordingly, plaintiff's conversion claim must be dismissed against her.

## CONCLUSION

Based on the foregoing, Hamilton's Motion to Dismiss; Motion for Summary Judgment [36] is granted and Hamilton is dismissed with prejudice. The Motion for Summary Judgment [25] filed by Chase and Sponsors, Inc. is granted in part and denied in part. The only remaining claim is plaintiff's conversion claim alleged against Chase and Sponsors, Inc. Hamilton's Motion to Compel Responses to Defendant's First Set of Interrogatories [46] is denied as moot.

Page 14 - OPINION AND ORDER

The Court will arrange a telephone conference in the near future to set a trial date.

Plaintiff is directed to call the court at (503) 326-8230 and provide a telephone number where he may be reached.

IT IS SO ORDERED.

DATED this ____21st____ day of March, 2013.


        __/s/ Garr M. King_____
        Garr M. King
        United States District Judge

Page 15 - OPINION AND ORDER